IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MEREACOS REED,

    Plaintiff,
v.                                              CASE NO. 1:16-cv-142-MW-GRJ

DEP'T OF VETERANS AFFAIRS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 63, Defendant's Motion for Summary Judgment. Plaintiff has filed a response and amended response in opposition (ECF Nos. 72, 80), and Defendant has filed a reply (ECF No. 73). For the reasons explained below, it is respectfully recommended that Defendant's motion be denied.

### I. BACKGROUND

Plaintiff brings claims against the Department of Veterans Affairs (the "VA") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Plaintiff was initially represented by counsel in this case, but is now proceeding *pro se*. *See* ECF Nos. 1, 36. Plaintiff was employed as a Telemetry Technician at the Malcolm Randall Veterans Administration

Medical Center.  Plaintiff's First Amended Complaint, ECF No. 21, alleged that Defendant created a hostile work environment in violation of Title VII and that she was wrongfully disciplined and ultimately terminated in retaliation for EEO activity.  ECF No. 21 at 3-4.  Defendant moved to dismiss the First Amended Complaint, arguing that Plaintiff's hostile work environment claim failed to state a claim for relief, and her retaliation claim should be dismissed for failure to exhaust administrative remedies because Plaintiff had an appeal of her termination pending before the Merit Systems Protection Board.  ECF No. 22.  The Court dismissed Plaintiff's retaliation and termination claims for failure to exhaust administrative remedies.  The Court dismissed Plaintiff's hostile work environment claim with leave to file a Second Amended Complaint.  ECF No. 39.

The Second Amended Complaint clarified Plaintiff's hostile work environment claims.  Plaintiff, who is African-American, alleges that from August 2012 through August 2015 her coworkers, most of whom were white, subjected Plaintiff to race-based harassment.  Plaintiff contends that in December 2013 a white coworker "likened Plaintiff to less than a monkey," while complaining that she was not properly training another worker.  The coworker stated that "even a monkey can do this job."  ECF

No. 40 at 3. Plaintiff complained to the coworker, and the next day he greeted her with the taunt "what's up monkey?" Plaintiff complained to her nurse manager, but she alleges that no action was taken. The coworker subsequently told Plaintiff that "it does no justice to complain," and again reiterated that a monkey could do Plaintiff's job. *Id*.

Plaintiff alleges that she was subjected to insults regarding her ethnic dialect. *Id*. at 4. She alleges that "[t]he notion that Black people are unclean was a frequent theme of the speech and behavior of Plaintiff's white coworkers." Plaintiff alleges that at least three times per day, from November 2014 to August 2015, five of her white coworkers would disinfect items that she had touched as soon as she left her workstation. The white coworkers did not similarly clean or disinfect items that had been touched by each other. Plaintiff alleges that during 2014 and 2015, on at least 60 occasions, two of her white coworkers, in her presence, stereotyped African medical staff as "stinking" and not bathing. *Id*.

Plaintiff further alleges that because of her race and her "Louisiana roots," coworkers stereotyped her as being a practitioner of voodoo. In May 2014, a coworker loudly called her a "Louisiana voodoo ass." *Id*. Plaintiff claims that on at least five occasions in 2015 one of the white

coworkers, who habitually disinfected items she had touched, taunted Plaintiff because of her race with verbiage about hexes and voodoo dolls. Plaintiff alleges that she had been warned about that coworker's "skinhead" background. *Id*. Plaintiff alleges that she complained to management but no remedial action was taken. *Id*. at 5.

The Court previously denied Defendant's motion to dismiss the Second Amended Complaint, in which Defendant again argued that Plaintiff failed to state a hostile work environment claim. ECF. No. 51. Defendant now contends that it is entitled to summary judgment because Plaintiff cannot show that she was subjected to harassment based upon her race, or that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. ECF No. 63.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories,

and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).[2]

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that:

It is well settled that "after adequate time for discovery and

---

[2] Although unpublished opinions are not binding on this Court, they are persuasive authority. 11th Cir. R. 36-2.

> upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim.  As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.,* 301 Fed. App'x 881, 885 (11th Cir. 2008).  Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

To establish a prima facie case for a hostile work environment, Plaintiff must show the following five elements:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected

characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment either under a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The requirement that the harassment be severe or pervasive contains both an objective and a subjective component. *Miller,* 277 F.3d at 1275 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). "Thus, to be actionable, this behavior must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'" *Id*. (quoting *Harris*, 510 U.S. at 21-22). In evaluating the objective severity or pervasiveness of the harassment, the Court considers (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23). In general, isolated incidents or occasional abusive language will not amount to a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

## III.  DISCUSSION

### A. *Summary Judgment Evidence*

There is no dispute that Plaintiff is a member of a protected group. Defendant contends that the summary judgment evidence does not establish that Plaintiff was harassed on the basis of her race, or that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, or the that VA is responsible for such an environment under a theory of vicarious or direct liability.  ECF No. 63 at 6.

First, regarding Plaintiff's claim that white coworkers stereotyped African medical staff as "stinking" and not bathing (*see* ECF No. 40 at 4), Defendant points to Plaintiff's deposition testimony in which Plaintiff stated that two white coworkers, Dennis Holder and Terrance Ritzman, made comments about a black African doctor.  Plaintiff testified that Ritzman stated "Boy, you know, they always stink.  They don't ever take baths, the Africans." ECF No. 63-1 at 62-64.  Plaintiff testified that such comments occurred "all the time," and estimated that such comments occurred 60 times during the relevant period.  *Id.*  at 64-65.  Defendant argues that "Plaintiff has not made the claim that the notion that Black people were

unclean, stinking, and not bathing was directed at her or other African-American employees," and that the comment about the African doctor "was not a racial comment." ECF No. 63 at 9.

Defendant reads this claim too narrowly. In addition to claiming that her white coworkers stereotyped a black African physician as not bathing, Plaintiff specifically alleges in the Second Amended Complaint that "[t]he notion that black people are unclean was a frequent theme of the speech and behavior of Plaintiff's white coworkers." ECF No. 40 at 4. Plaintiff alleges that at least three times per day, from November 2014 to August 2015, five of her white coworkers would disinfect items that she had touched as soon as she left her workstation. The white coworkers did not similarly clean or disinfect items that had been touched by each other. *Id*. In deposition, Plaintiff testified that Dennis Holder, Terrance Ritzman, Harry Meyer, Teresa Brooks, and Martin Freese, all of whom are white, would clean Plaintiff's work area with disinfecting wipes when she took breaks. Plaintiff never saw her coworkers disinfect the work areas of other white coworkers. ECF No. 63-1 at 53-62.

In opposition to summary judgment, Plaintiff submits verified

declarations from several witnesses.[1]  According to the declaration of Michael Leath, who was a VA employee for ten years, he accompanied Plaintiff to a meeting with her nurse manager, Stephanie Beckham, in August 2014 during which Plaintiff complained to Beckham about her coworkers disinfecting her work area and about the comments that African doctors smelled.  ECF No. 80 at 32.  Joanna Soto-Garcia, a VA employee who served as Plaintiff's union representative from 2012 to 2015, submitted a verified declaration that she personally heard Plaintiff's white coworkers stereotype black African or Haitian doctors as "unclean and smelly."  ECF No. 80 at 33.  Another former VA employee, Janet Stewart, submitted a verified declaration stating that during 2013 and 2014 she visited Plaintiff in the telemetry unit at least twice per week so they could take breaks together.  According to Stewart, "[o]n each of these occasions, I observed Ms. Reed's white coworkers using disinfectant wipes to wipe her desk and

---

[1] Defendant's reply to Plaintiff's summary judgment response argues that Plaintiff's declaration should be disregarded pursuant to the "sham affidavit doctrine" because it is inconsistent in some respects with her deposition testimony.  ECF No. 73.  Defendant also contends that Plaintiff's declaration and the declarations of Navorus Pullings, Janet Stewart, Joanna Soto-Garcia, and Michael Leath should be stricken as unverified.  *Id.*  Plaintiff subsequently re-filed the declarations with appropriate verifications.  ECF No. 80.  Moreover, the Court has found it unnecessary to refer to Plaintiff's declaration in concluding that genuine issues of material fact preclude entry of summary judgment.  The Court's conclusions are based on consideration of the evidence that is admissible in whole or in part and/or reducible to admissible evidence in whole or in part, as referenced herein.  *See* Fed. R. Civ. P. 56(c).

items on it . . . . I specifically observed that when the white telemetry technicians took breaks, the remaining ones did not disinfect their work areas." ECF NO. 80 at 34.

Plaintiff additionally submits her verified interrogatory answers, in which she also says that her white coworkers stereotyped African doctors as "stinking and not bathing," and that the disinfecting of her work area stemmed from white coworkers stereotyping of black people as "unclean". ECF No. 80 at 15-16.  Thus, Plaintiff's complaint that her coworkers stereotyped an African doctor as "stinking" is connected to her claim that *she* was harassed by white coworkers stereotyping black people as "unclean."  It is a claim about derogatory racial stereotypes.

In the same vein, Plaintiff alleges that she was also subjected to derogatory statements comparing her to a "monkey".  ECF No. 40 at 3.  In December 2013, Plaintiff was training fellow African-American co-worker Jenesis Walton. Plaintiff testified that Walton became flustered.  Harry Meyer, a white co-worker, stated to Walton "don't cry, a monkey can do this job, it's nothing to it."  ECF No. 63-1 at 40.  Plaintiff felt that the remark was offensive and racist, and she reported the comment to Beckham.  Plaintiff testified that the following day Meyer greeted her with "what's up, monkey?"

Plaintiff then made a written complaint to the union and also verbally reported the comment to the EEO. Plaintiff acknowledged in her deposition that Beckham counseled Meyer and told him that the "monkey" comment to Walton was inappropriate. *Id.* at 41-53.

In support of summary judgment, Defendant points to a Report of Contact form completed by Beckham in which Beckham states that Plaintiff denied that Meyer intended his comment to Walton as racist, offensive, or impolite. ECF No. 63-6 at 1. Plaintiff disputes the authenticity of Beckham's unverified statement, which Plaintiff says was never provided to her during the EEO complaint process. ECF No. 80 at 4. Moreover, even if Meyer's statement to Walton arguably has an innocuous explanation in light of the context in which it was made, Plaintiff testified in her deposition that from 2013 to 2015, Meyer continued to make frequent comments in her presence about the job being so easy that a monkey could do it. She testified that the comments were made in the presence of other coworkers, including Holder, Ritzman, and Nydia Soto. *Id.* at 41-53.

In his declaration, Michael Leath states that when he accompanied Plaintiff to the meeting with Beckham in August 2014 Beckham spoke to someone on the telephone, in their presence, and stated "they act like

monkeys." Leath, who is also African-American, took the statement as a reference to Plaintiff and himself. When Leath challenged Beckham about the comment, she directed Leath to leave the meeting. ECF No. 80 at 32.

Plaintiff claims that she was subjected to other derogatory racial stereotyping suggesting that she practiced voodoo. In May 2014, Plaintiff was involved in a disagreement about an overtime assignment with Jenesis Walton and other staff members. Walton became upset and stated "nobody asked her Louisiana Voodoo Ass to stay over and she needs to take her ugly ass home." ECF No. 63-1 at 95 (Plaintiff's statement made on a "Report of Contact" to Nurse Manager Amanda Rogers). Plaintiff's white coworker, Ritzman, asked Plaintiff if she used "voodoo dolls" on people. In her interrogatory answers, Plaintiff stated that on at least five occasions in 2015 Ritzman "taunted Plaintiff . . . . with verbiage about hexes and voodoo dolls," stereotyping Plaintiff as a practitioner of voodoo because of her race. ECF No. 80 at 15. Plaintiff also stated that Ritzman subjected her to "insults regarding her ethnic dialect." *Id.* At deposition, Plaintiff explained that Ritzman frequently stated that he could not understand her Louisiana accent. ECF No. 63-1 at 80-81.

### B. Analysis of Defendant's Arguments

Defendant contends that Plaintiff has failed to show that any of the foregoing actions or statements were based on her race or were sufficiently severe or pervasive to create a hostile work environment. ECF No. 63 at 9-13.

It is a "bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc). Therefore, only conduct that is "based on" a protected category, such as race, may be considered in a hostile work environment analysis. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir.2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "Innocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party (the plaintiff), are not counted." *Id.* at 583; *see also Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir.2007) ("Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that

discriminates based on a protected category[.]"). This "inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

The Eleventh Circuit has addressed racial stereotyping as a basis for a hostile work environment claim.  The Court has observed that "'[t]he use of the term 'monkey' and other similar words have been part of actionable racial harassment claims across the country.'" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (quoting *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 911 (8th Cir.2006)); *see also Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1269 (11th Cir.2008) (describing "racial slurs," including the term "monkey" that were used against an African–American employee); *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (citing "comparisons to slaves and monkeys" among other harassment as sufficient to create a jury question with respect to a racially hostile work environment). "'Given the history of racial stereotypes against African–Americans and the prevalent one of African–Americans as animals or monkeys, it is a reasonable—perhaps even an obvious—conclusion that' the use of monkey imagery is intended as a

'racial insult' where no benign explanation for the imagery appears." *Jones*, 683 F.3d at 1297 (quoting *United States v. Jones*, 159 F.3d 969, 977 (6th Cir.1998)); *cf. Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647–48 (7th Cir.2011) (describing contexts in which managers might use monkey imagery for legitimate workplace purposes).

Even accepting Defendant's assertion that Meyer's original "monkey" statement to Jenesis Walton was an innocuous comment intended for the legitimate purpose of putting a nervous trainee at ease, Plaintiff testified that Meyer continued to use the term "monkey" in her presence for an extended period of time even after being counseled by Beckham that the term was inappropriate.  ECF No. 63-1 at 51-52.  Further, Plaintiff's deposition testimony and evidence submitted in opposition to summary judgment, summarized above, supports her claim that she experienced workplace harassment based on derogatory stereotypes that black people are unclean and that black people from Louisiana practice voodoo.

Considering the totality of this evidence, viewed in a light most favorable to Plaintiff, a reasonable trier of fact could find that the statements and actions of Plaintiff's coworkers were race-based.  The Court further concludes that Plaintiff has presented evidence from which a

reasonable jury could find that her coworkers' conduct was sufficiently severe or pervasive to create a hostile work environment.  In particular, the alleged ongoing references to "monkeys" in her presence and being stereotyped as "unclean" and a practitioner of voodoo, while not physically threatening, could be viewed as creating an environment "'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'"  *Miller,* 277 F.3d at 1275 (quoting *Harris,* 510 U.S. at 21).

## IV.  RECOMMENDATION

In sum, the Court finds on this record that there are genuine issues of material fact that preclude entry of summary judgment in Defendant's favor. It is therefore respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. 63, should be **DENIED**.

**IN CHAMBERS** this 31st day of May 2019.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**